# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# AIKEN DIVISION

| | |
|---|---|
| Devon Davenport, ) <br> ) <br> ) <br>                  Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Goodyear Dunlop Tires North America, Ltd. ) <br> and the Goodyear Tire and Rubber Company, ) <br> ) <br>                  Defendants. ) <br> _____ ) | Civil Action No.: 1:15-cv-03752-JMC <br><br><br> **ORDER AND OPINION** |

      This matter is before the court pursuant to Defendants Goodyear Dunlop Tires North America, Ltd. and The Goodyear Tire and Rubber Company's ("Goodyear") (collectively "Defendants") Motion to Exclude Testimony of Plaintiffs' Expert Witness, Dennis P. Carlson, Jr. ("Mr. Carlson"). (ECF No. 100). Plaintiffs Maria Davenport, Arnold Davenport, Demorio Davenport, and Devon Davenport (collectively "Plaintiffs") filed a response in opposition to Defendants' Motion (ECF No. 119). For the reasons set forth below, the court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Exclude Testimony of Dennis P. Carlson, Jr. (ECF No. 100).

      **I.**      **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

      On September 18, 2015, Plaintiffs Maria Davenport, Arnold Davenport, and Demorio Davenport filed a Complaint against Defendants. (ECF No. 1.) Plaintiff Maria Davenport alleged she suffered injuries while she was driving a 1996 Ford Explorer when the tread on the left rear tire ("Subject Tire") separated from the car, causing it to overturn. (*Id.*) Plaintiff Demorio Davenport was a passenger in the car and he also alleges that he suffered injuries during the incident. (*Id.*) Plaintiffs Maria and Demorio Davenport seek damages for their claims of negligence, strict liability,

1

and breach of warranty. (*Id.*) Plaintiff Arnold Davenport alleges loss of consortium. (*Id*. at 2.) On August 2, 2016, Defendants filed a Motion to Consolidate both cases. (ECF No. 41.) On October 25, 2016, the court granted Defendants' Motion to Consolidate for all purposes, including trial. (ECF No. 59 at 5.)

In the present Motion, Defendants contend that Mr. Carlson's testimony should be excluded because his testimony lacks the requisite reliability and relevance required under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).[1] (ECF No. 100 at 4 n.5.) Defendants request that the court exclude:

1. reference to tires that are not substantially similar;
2. reference to the Goodyear GTS 235/75R15 tire and other "Goodyear-like truck tires" for any purpose;
3. general reference to other tires in general without substantial similarity to the Subject Tire;
4. reference to separation events in other Goodyear tires;
5. reference to problems with the companion tires;
6. reference to how the right rear tire became unseated;
7. statements that people are not able to read Department of Transportation ("DOT") tire codes;
8. testimony that it is not reasonable to expect a civilian to be concerned if a companion tire began to leak air within a week of purchase;
9. suggestion that because Arnold and Maria Davenport had commercial driver's licenses, they checked their tires regularly;
10. reference to a "bead heel defect" or any other defect not included in Mr. Carlson's report;
11. statement that cold set marks formed post-accident; and
12. statement that the presence of weights inside the rim indicate the tire is not made well.[2]

---

[1] The court notes that it has already found that Mr. Carlson's knowledge, education, training, and experience generally qualify him to provide expert testimony in this case. (ECF No. 153 at 7.)
[2] Defendants request that the court "exclude from evidence any testimony – documentary or otherwise – and to preclude any and all comments or arguments, and to instruct Plaintiffs' counsel and any and all witnesses to refrain from mentioning, either directly or indirectly, in any manner whatsoever, anything concerning" the aforementioned twelve pieces of evidence. (ECF No. 100 at 1-2.) The court finds that this request is unreasonably broad and the court will not singlehandedly deprive Plaintiffs of their ability to put forth evidence in this case. *Hawthorne Partners v. AT&T Techs.*, Inc., 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) ("[E]videntiary rulings should be deferred until trial so that

2

(ECF No. 100.) On October 13, 2017, Plaintiffs filed a joint response, invalidating each piece of evidence Defendants aim to exclude and adding that Defendants' present Motion is voluminous and the issues presented are more appropriately decided at trial. (ECF No. 119.) On December 15, 2017, Defendants filed a reply in large part reasserting their position in their Motion in Limine. (ECF No. 132.)

## II. LEGAL STANDARD

Pursuant to Federal Rule of Evidence ("Fed. R. Evid.") 104(a), the court must determine "[p]reliminary questions concerning the qualification of a person to be a witness . . . or the admissibility of evidence," including the admissibility of expert testimony under Fed. R. Evid. 702. *Daubert*, 509 U.S. at 587–88. A party offering an expert's opinion "bears the burden of establishing that the 'pertinent admissibility requirements are met by a preponderance of the evidence.'" *Cantrell v. Wirtgen Am., Inc.*, No.: CCB–07–2778, 2011 WL 915324, at *2 (D. Md. Mar. 15, 2011) (quoting Fed. R. Evid. 702 advisory committee notes (citing *Bourjaily v. United States*, 483 U.S. 171, 107 (1987))). In determining the admissibility of an expert's opinion, the court must reconcile the intent for Rule 702 "to liberalize the introduction of relevant expert testimony" with "the high potential for expert opinions to mislead, rather than enlighten, a jury." *Id*.

The admissibility of expert witness testimony is specifically governed by Fed. R. Evid. 702, which provides that an expert may offer an opinion if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the

---

questions of foundation, relevancy, and potential prejudice may be resolved in proper context."). Accordingly, the court denies Defendants' request and it limits its analysis of this Motion to Mr. Carlson's testimony.

facts of the case.

In determining whether expert witness testimony is admissible, the court evaluates whether it is relevant and reliable. *Daubert,* 509 U.S. at 589. Under Fed. R. Evid. 401, evidence is relevant if (1) "it has a tendency to make a fact more or less probable than it would be without the evidence" and (2) "the fact is of consequence in determining the action."

In making an assessment of relevance and reliability, courts acting as a "gatekeeper" in determining the admissibility of expert testimony, may consider a number of factors, including: (1) "whether the theory or technique in question can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate; (4) the existence and maintenance of standards controlling its operation; and (5) whether it has attracted widespread acceptance within a relevant scientific community." *Daubert*, 509 U.S. at 589, 592–595. *Daubert*'s list of factors is "meant to be helpful, not definitive" and "do not all necessarily apply even in every instance in which the reliability of scientific testimony is challenged." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151 (1999). The United States Court of Appeals for the Fourth Circuit adopted this standard for the admissibility of expert witness testimony. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). The Fourth Circuit stated that "the touchstone of admissibility is whether the testimony will assist the trier of fact." *Wehling v. Sandoz Pharm. Corp.*, 162 F.3d 1158, 1998 WL 546097, at *3 (4th Cir. 1998) (table decision).

### III. ANALYSIS

**1. Reference to Tires that are Not Substantially Similar**

Defendants posit that the "exemplar tires" that were provided for comparison to the Subject Tire to Mr. Carlson by his consultant, Paul Maurer, should be excluded because there is no showing that these tires are substantially similar to the Subject Tire. (ECF No. 100 at 3) (citing *Branham v.*

4

*Ford Motor Co.*, 390 S.C. 203, 225 (2010) ("Evidence of similar accidents, transactions, or happenings is admissible in South Carolina where there is some special relation between the accidents tending to prove or disprove some fact in dispute."). Defendants made this same argument in a prior Motion in Limine to Exclude Testimony of Mr. Carlson. (*See* ECF No. 114 at 8-11.) The court already ruled that this evidence is admissible in its prior Order:

> Mr. Carlson uses other tires to compare tire "construction in three areas. I'm looking at whether they have a nylon, full nylon cap plies, whether they have a sufficient wedge, and the innerliner thickness." (ECF No. 90-2 at 16.) He is comparing the construction of the tires, and presents no evidence of any incident or injury caused by any of these tires. *See Branham*, 390 S.C. at 203 ("[I]f the cause of an accident is known and the cause is not substantially similar to the accident at issue, evidence of the other accident should be excluded. Yet, where the precise cause of an accident is not known, [] data has relevance when compared to [] data of other vehicles."). The evidence of other tires is not subject to the substantial similarity requirement.

(ECF No. 160 at 5-9.)

**2. Reference to the Goodyear GTS 235/75R15 Tire and Other "Goodyear-Like Truck Tires" For Any Purpose**

Defendants seek to exclude reference to the Goodyear GTS 235/75R15 Tire and other "Goodyear-like truck tires" as it "lacks foundation and a showing of substantial similarity, and is misleading and prejudicial."[3] (ECF No. 100 at 4.) Defendants made this same argument in a prior Motion in Limine to Exclude Testimony of Mr. Carlson. (*See* ECF No. 114 at 20-21.) The court already ruled this evidence is admissible in its prior Order. (*See* ECF No. 160 at 17-18.)

---

[3] The court notes that Defendants add a "misleading and prejudicial" argument at the end of almost every issue in its Motion without consistently presenting sufficient specificity as to how the evidence is misleading or prejudicial.

### 3. General Reference to Other Tires in General Without Substantial Similarity to the Subject Tire

In Mr. Carlson's deposition and expert report, he discusses various other tires including but not limited to the Michelin LTS series, the Goodyear GTS system in general, the Michelin Tire in general, radial tires from the 1960's, and other general categories of tires. (ECF No. 100 at 4.) Defendants posit that all such references should be excluded as they "lack foundation and a showing of substantial similarity, and are misleading and prejudicial." (*Id*. at 5.) The court has touched on this substantial similarity argument in regard to the Michelin LTS and Goodyear GTS Tires in its prior Order. (*See* ECF No. 160 at 17-18.) The court ruled that such evidence is admissible. (*Id*.)

As to the other tires mentioned, Defendants are attempting to request that the court prohibit a tire design expert from referencing any tire without showing it is substantially similar to the Subject Tire. The court finds this request to be unreasonable. *See Wickersham v. Ford Motor Co.*, No. 9:14-cv-0459, 2017 WL 3783122, at *8 (D.S.C. Aug. 30, 2017) ("The federal case law on the issue indicates that the substantial similarity requirement is tied to the purpose for which the evidence is admitted."). Mr. Carlson is not referencing the tires to prove that the Subject Tire is defective. Instead, Mr. Carlson is providing an opinion that a particular manufacturer had a good design as it is relevant to feasible alternative designs that existed at the time.

Identification of the alternative design used by another manufacturer is sufficient proof of feasible alternative design. *See Wickersham v. Ford Motor Co.*, 194 F. Supp. 3d 434, 439 (D.S.C. 2016) (stating plaintiff's expert's "testimony clearly indicates that other manufacturers have utilized the raised threshold approach [alternative design] in the past. *See* Caruso Depo. 137:19-138:24 (explaining that designs created by Delco—Caruso's former employer— incorporated such a system and would not have deployed the airbag if used in this case). The fact that this approach was used in

the past certainly suggests that it is feasible from a cost, safety, and functional perspective.")). Further, in *Wickersham*, the design was used in other vehicles and this did not render it insufficient. The relevant point is that the design and technology existed at the time of manufacture and other manufacturers used it. Further, the number and type of tires Mr. Carlson has analyzed is directly relevant to his background and qualifications. Therefore, the court denies Defendants' Motion on this issue.

### 4. Reference to Separation Events in Other Goodyear Tires

Defendants entreat the court to exclude testimony from Mr. Carlson concerning alleged separation problems that Defendants may have been having with tires aside from the Subject Tire, or tires that are not substantially similar to the Subject Tire. (ECF No. 100 at 6.) It is unclear from Defendants' Motion what testimony they seek to exclude. Defendants cite to Mr. Carlson's deposition testimony at page 28, lines 21-22. (ECF No. 100 at 7.) However, those lines refer to testimony about bead failure of a Michelin tire. (ECF No. 119-1 at 26.) Plaintiffs believe Defendants may be referring to page 36 of Mr. Carlson's deposition. (ECF No. 119 at 11.) Defendants' counsel questioned Mr. Carlson about the shearography study:

> Q. Do you believe the Davenport case had anything to do with the study being conducted?
> A. There is a slight relationship in that we get a lot of Dunlop cases, separation cases. And so in that respect, it might have had some factor. But there was no, I would say, direct relationship.

(ECF No. 119-1 at 36.) This testimony is admissible because it is an explanation of a basis for conducting the shearography study that supports Mr. Carlson's opinions. This is not evidence of other incidents but of a reason that a study was conducted. Therefore, it is not subject to the substantial similarity requirement. *See Branham*, 390 S.C. at 203 ("[I]f the cause of an accident is known and the cause is not substantially similar to the accident at issue, evidence of the other accident

7

should be excluded. Yet, where the precise cause of an accident is not known, [] data has relevance when compared to [] data of other vehicles.").

Further, the portions of Mr. Carlson's report to which Defendants cite are also admissible evidence. (ECF No. 100 at 7.) As to the specific reference that Mr. Carlson examined approximately 180 Goodyear and/or Dunlop tires that had a tread separation that caused injuries, this testimony is admissible because Plaintiffs are not using it to establish that the Subject Tire is defective. The evidence goes to Mr. Carlson's experience and qualifications as to this particular manufacturer to show he has experience in analyzing Defendants' tires. Because the evidence is not used to prove defect, it is not subject to the substantial similarity requirement.

As to the reference to Defendants' "separation problems" on page 14 of Mr. Carlson's report, that reference is in a discussion of government standards and is an explanation of Mr. Carlson's opinion that the Subject Tire did not meet government standards. (ECF No. 90-3 at 14.) He explains that the tests in effect at the time of manufacture have been updated because they were insufficient as they failed to detect problems in numerous manufacturers' tires, including Goodyear. *Id.* The testimony is not used to prove that the Subject Tire is defective because Defendants had separation problems with other tires, but is relevant to government standards. Thus, the court will allow this evidence at trial.

**5. Reference to Problems with the Companion Tires**

Defendants maintain that Mr. Carlson should be prohibited from stating that there were problems with any of the companion tires on the vehicle because he did not physically inspect the tires. (ECF No. 100 at 7.) The manner in which Defendants word the issue is misleading as Mr. Carlson did not testify about "problems" with the companion tires, but instead said, "I don't see any problem." (ECF No. 119-1 at 102.) He is permitted to testify about his personal observation and

professional opinion that he does not see any problem with the companion tires. *See, e.g.*, Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."). While Mr. Carlson did not physically examine the companion tires, he has seen and analyzed pictures of them and is qualified to testify that he did not observe any problems. Defendants' arguments on this point are more appropriate for cross-examination. *See Daubert*, 509 U.S. at 596 ("[v]igorous cross- examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Consequently, the court denies Defendants' Motion regarding this evidence.

### 6. Testimony as to How the Right Rear Tire Became Unseated

Defendants espouse that Mr. Carlson should be precluded from testifying concerning how the right rear tire became unseated. (ECF No. 100 at 7.) The court agrees in part. Mr. Carlson may testify about the facts of the accident — that the right rear tire became unseated during the accident. Defendants do not dispute this fact, and it does not require an expert to make that statement. However, to permit Mr. Carlson to opine as to how the tire became unseated would be to offer an accident reconstruction opinion, which is not Mr. Carlson's area of expertise and would improperly bolster the opinion of Plaintiffs' designated accident reconstruction expert, Mr. Gilbert. *See* Fed. R. Evid. 403 (Evidence, though relevant, is inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). Therefore, the court finds that this evidence is inadmissible.

### 7. Statements that People are Not Able to Read DOT Tire Codes

During the deposition, Defendants' counsel asked Mr. Carlson if he would buy a tire that he knew to be 11 years old. (ECF No. 119-1 at 105.) Mr. Carlson answered, "Well, I would not buy it if it were 11 years old, but people don't look at the [DOT code] date because it is a code that very few people can read." *Id*. Defendants argue that this testimony is speculative and not relevant to Plaintiffs in this matter. (ECF No. 100 at 8.) The court agrees. The issue in this case is not whether Mr. Carlson, a tire expert, would buy such a tire. *See In re Bausch & Lomb Contact Lens Sol. Prods. Liab. Litig.*, No. 1785, 2009 WL 2750462, at *9 (D.S.C. Aug. 26, 2009) ("An expert's subjective, personal beliefs or speculation fail to satisfy the requirement of reliability."). Accordingly, the court grants Defendants' Motion on this issue, as such testimony is purely speculative.

### 8. Testimony that it is Not Reasonable for a Civilian to Link a Leak in One Tire to a Potential Problem in Another Tire Purchased at the Same Time

Mr. Carlson stated in his deposition that he is not sure it would be reasonable to expect an average civilian to become concerned about the condition of a tire, if the tire was purchased with a second tire, and the second tire began to leak air within a week. (ECF No. 100 at 8.) Plaintiffs suggest that Mr. Carlson's proposition is "simply delineating between the knowledge he has as a tire expert and the knowledge an average person has about tires." (ECF No. 119 at 14.) However, Mr. Carlson does not present any facts, evidence or data to support this opinion, or why this opinion is within the purview of an expert opinion. The trial court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152. As such, the court grants Defendants' Motion on this issue.

9. **Suggestion that Because Arnold and Maria Davenport had Commercial Driver's Licenses, they Checked their Tires Regularly**

Mr. Carlson testified in his deposition, "I know [Arnold] checks his tires regularly, like Mrs. Davenport did, because of their Commercial Driver's Licenses." (ECF No. 90-2 at 29.) Defendants assert that this testimony is not based on any facts or evidence and is misleading and prejudicial. (ECF No. 100 at 8.) The court acknowledges that Arnold and Maria Davenport testified regarding their tire inspection experience as it relates to their jobs as a Heavy Equipment Operator for Aiken County Public Works and a school bus driver (respectively). (ECF No. 119 at 15.) Mr. Carlson's testimony is partially supported by the Davenports' depositions. Mrs. Davenport stated that she would personally walk around and look at the tires on her vehicle each week, including the day of the accident. (ECF No. 119-4 at 47-50.) However, Plaintiffs only cite to Mr. Davenport's deposition statement that he normally checks the tires before purchasing a vehicle. (ECF No. 90-6 at 12.) Mr. Carlson can testify as to his opinion about the specific information the Davenports provided in their depositions regarding how and when they checked their tires, but he is not to make a vague statement that they "checked their tires regularly." Pursuant to Fed. R. Evid. 702's requirements, the expert testimony must be "based on sufficient facts or data," "the product of reliable principles and methods," and that the expert "reliably appl[y] the principles and methods to the facts of the case." Thus, the court denies Defendants' Motion, taking into account the court's aforementioned limitation on Mr. Carlson's testimony regarding this issue.

10. **Reference to a "Bead Heel Defect" or Any Other Defect Not Included in Mr. Carlson's Report**

Defendants move to exclude any opinion by Mr. Carlson not included in his report. (ECF No. 100 at 9.) This requested exclusion includes the following opinion offered by Mr. Carlson at his deposition, but omitted from his report that followed his deposition:

> Q. All right. Now, let's go to the second page of your notes.
> A. Yes.
> Q. And now you've just got the tire serial side and nonserial side, top and bottom, and then you've got observations on each with the degrees noted -- 90, 180, 270, correct?
> A. Yes.
> Q. Let's start at the top, over to the right.
> A. Bead heel defect at 65 to 70 degrees. No PT, exposes the chafer.
> Q. No PT, meaning what?
> A. Protector.
> Q. And do you have photographs of that?
> A. I don't think so. One picture is P1630076. That shows what I think is this defect in another part of the tire. I don't see one that shows this defect here.
> Q. But it's the same bead heel defect?
> A. Yes.
> Q. So it's not at 65 to 70 degrees?
> A. No, it's not.
> Q. Where is it located?
> A. It looks like it is between 180 and 90.
> Q. Can you circle it with that red pen over there?
> A. Yeah.
> Q. Can you just write, bead heel defect? Is that a manufacturing or design defect?
> A. Well, it's most likely manufacturing. I must say that I really can't find out if that is causative, because I would have to cut the bead or know more about the manufacturer. Now, I have some indication from looking at the cut tire analysis of how the bead is made, but at this point, I cannot say it's a causative defect.

(ECF No. 90-2 at 37-38.) In addition to not being included in his report, Defendants opine that this opinion is prejudicial, speculative and unreliable, as Mr. Carlson admitted himself that he cannot say this alleged defect caused or contributed to the accident and the injuries alleged to have occurred by Plaintiffs. (ECF No. 100 at 9.) Defendants also assert that Mr. Carlson should likewise be prevented from offering any other opinions not included in his expert report (ECF No. 90-3). (ECF No. 100 at 10.)

The court disagrees as to the limitation Defendants try to impose on Mr. Carlson by only presenting opinions stated in his expert report. In his report, Mr. Carlson specifically "reserve[d] the right to supplement [his] opinions." (ECF No. 90-3 at 17.) Therefore, that Mr. Carlson did not discuss bead heel in his expert report is not a basis for its exclusion, especially given that Defendants

have been on notice of the opinion for over two years, since Mr. Carlson's April 30, 2015 deposition.

As to the substance of the testimony, Plaintiffs perceive it to be admissible as relevant evidence of Defendants' overall poor manufacturing quality control process. (ECF No. 119 at 16.) The court finds that an additional manufacturing defect in the Subject Tire is relevant and Mr. Carlson's opinion regarding the bead heel defect is reliable based on his background and experience with tire defects. An expert opinion is reliable when "it is supported by adequate validation to render it trustworthy." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999). "[T]he court need not determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or certainly correct." *Id*. at 261. Therefore, the court will allow Mr. Carlson to testify about a bead heel defect in the Subject Tire, but such testimony will not bear on causation as this expert has not been offered on this issue.

**11. Testimony that Cold Set Marks Formed Post-Accident**

During Mr. Carlson's deposition, Defendants' counsel asked him to explain some of his notes. One note states: "Cold set marks inside wall rub." (ECF No. 119-1 at 147.) Mr. Carlson explained "It's essentially where the tire has laid on something, perhaps like gravel or something like that, for some period of time." (*Id*. at 132.) When asked if he believes those marks occurred post-accident, Mr. Carlson answered, "Very much so. I think that is probably after the accident that cold set marks take a certain amount of time to form." (*Id*.) Mr. Davenport testified he purchased the Subject Tire from a fenced-in area at H&B Discount Tires ("H&B"). (ECF No. 90-6 at 9, 31.) The photos of H&B used as an exhibit during the owners' deposition show that the fenced-in area is pavement, not gravel. (ECF No. 119 at 17.) Plaintiffs posit that this explanation supports Mr. Carlson's statement that the circular cold set marks formed after the accident as they were not stored on gravel at H&B. (*Id*.)

13

Defendants believe this opinion is speculative, not found in fact or evidence, misleading and prejudicial. (ECF No. 100.) The court agrees. Although H&B's fenced-in area is in fact pavement not gravel, this argument does not definitively prove that the cold set marks formed post-accident. Consequently, the court does not find that this opinion is sufficiently reliable and grants Defendants' Motion on this issue.

**12. Testimony that the Presence of Wheel Weights on Inside of Rim Show the Subject Tire is Not Very Well Made**

Mr. Carlson testified that the presence of wheel weights inside the rim of the Subject Tire indicate that the tire was not well made. (ECF No. 100 at 10.) Defendants state that the opinion is not based on any facts or evidence and does not account for the possibility that the tire was previously removed from use and discarded prior to Plaintiff, Arnold Davenport's, purchase of it.

> Q. Is there any significance to the fact that the weights are on the inside of the rim, that you mentioned how big two of them were?
> A. It shows it's not a very well made tire.
> Q. Because it's got weights on the inside?
> A. Because it's very imbalanced. There can be reasons it went imbalanced.
> Q. Right. You don't know when those weights were put on there, right?
> A. True. I would have to assume they were done when Mr. Davenport had the tires mounted.
> Q. You don't know what?
> A. I don't know it. And it could be due to the rapid wear if it were balanced at that time, but I doubt if it was of a magnitude at that time, or if it was in there, that would cause it to be unbalanced.
> Q. But right now you can't give any opinions with regard to those weights and when they got there. You can't say that it's more probable than not that they would have been put on there at the time the Dunlop tires were put on those two rear rims or at some other time that preexisted. You can't say that, correct?
> A. I cannot say it.

(ECF No. 90-2 at 42.) Plaintiffs respond that Defendants' discussion of the testimony regarding wheel weights focuses on the wrong issue. (ECF No. 119 at 17.) "Defendants highlight testimony that Mr. Carlson cannot state when the wheel weights were put on the rim . . . However, when the wheel weights

14

were put on does not affect Mr. Carlson's opinion that its presence shows it's not a very well made tire because it's very imbalanced." (ECF No. 119-1 at 158.)

Mr. Carlson's opinion is based on his knowledge as a tire engineer and design expert. He explained there are reasons a tire may go imbalanced but that does not negate testimony that the tire became imbalanced because it is not well made. The plausibility of alternative explanations of an expert's testimony is an issue that focuses on the weight, not the admissibility, and should go to the jury. *Westberry*, 178 F.3d at 265. The court need not determine that a proffered expert's testimony is irrefutable or certainly correct. *See Cavallo v. Star Enter.*, 100 F.3d 1150, 1158-59 (4th Cir. 1996). Therefore, the court finds that the testimony is based on expert knowledge, is not speculative or unduly prejudicial. Defendants' argument is more appropriate for cross-examination, and thus, the court denies Defendants' Motion on this issue.

### 13. Request to Require Plaintiffs' Counsel to Approach the Bench Before Revealing Motion in Limine Topics

Lastly, Defendants request that the court require Plaintiffs' counsel to first approach the bench to seek the court's permission to reveal any of the topics that have been addressed in this Motion in Limine. (ECF No. 100 at 13.) In the event that either party perceives that something has occurred during the trial of the case that would cause the party to renew a Motion in Limine (that has otherwise been ruled as inadmissible by this Order or other Orders), the parties shall alert the court and not allow such evidence to be published to the jury without the court's permission.

### IV. CONCLUSION

Based on the foregoing, the court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Exclude Testimony of Dennis P. Carlson, Jr. (ECF No. 100).

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

February 22, 2018
Columbia, South Carolina