IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Devon Davenport, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 1:15-cv-03752-JMC |
| | ) | |
| v. | ) | |
| | ) | |
| Goodyear Dunlop Tires North America, Ltd. | ) | |
| and the Goodyear Tire and Rubber Company, | ) | |
| | ) | **ORDER AND OPINION** |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court pursuant to Defendants Goodyear Dunlop Tires North America, Ltd. and The Goodyear Tire and Rubber Company's ("Goodyear") (collectively "Defendants") Motion to Exclude Testimony of Plaintiffs' Expert Witness, Micky G. Gilbert, P.E. ("Mr. Gilbert") (ECF No. 101). Plaintiffs Maria Davenport, Arnold Davenport, and Demorio Davenport (collectively "Plaintiffs") filed a response in opposition to Defendants' Motion (ECF No. 120). For the reasons set forth below, the court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Exclude Testimony of Mr. Gilbert (ECF No. 101).

I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On September 18, 2015, Plaintiffs Maria Davenport, Arnold Davenport, and Demorio Davenport filed a Complaint against Defendants. (ECF No. 1.) Plaintiff Maria Davenport alleged she suffered injuries while she was driving a 1996 Ford Explorer ("Subject Vehicle") when the tread on the left rear tire ("Subject Tire") separated from the car, causing it to overturn. (*Id.*) Plaintiff Demorio Davenport was a passenger in the car and he also alleges that he suffered injuries during the incident. (*Id.*) Plaintiffs Maria and Demorio Davenport seek damages for their claims of negligence, strict liability, and breach of warranty. (*Id.*) Plaintiff Arnold

1

Davenport alleges loss of consortium. (*Id*. at 2.) On August 2, 2016, Defendants filed a Motion to Consolidate both cases. (ECF No. 34.) On October 25, 2016, the court granted Defendants' Motion to Consolidate for all purposes, including trial. (ECF No. 46 at 5.)

In the present Motion, Defendants contend that "Mr. Gilbert's testimony and opinions are the type of speculative, unfounded and unreliable opinions that Federal Rules of Evidence 403 and 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), are intended to prevent from being submitted to the jury as they would cause unfair prejudice, confuse the issues, mislead the jury and present cumulative evidence." (ECF No. 101 at 4-5.) As such, Defendants move to exclude from evidence any testimony concerning: (1) crashworthiness or stability; (2) tire design and manufacture; (3) mechanism or cause of the alleged failure of the Subject Tire; (4) "tire aging;" (5) origin of objects in the Subject Vehicle; (6) seatbelt; (7) illustrations in Mr. Gilbert's expert report; (8) pre-accident condition of the Subject Tire; (9) effect of the size of the Subject Tire; and (10) the National Advanced Driving Simulator.[1] (ECF No. 101). On December 1, 2017, Plaintiffs filed a joint response positing that each of Mr. Gilbert's opinions indeed satisfy the *Daubert* standard. (ECF No. 120.) On December 15, 2017, Defendant filed a reply to Plaintiffs' response. (ECF No. 130.)

---

[1] Defendants request that the court "exclude from evidence any testimony – documentary or otherwise – and to preclude any and all comments or arguments, and to instruct Plaintiffs' counsel and any and all witnesses to refrain from mentioning, either directly or indirectly, in any manner whatsoever, anything concerning" the aforementioned ten pieces of evidence. (ECF No. 117 at 5.) The court finds that this request is unreasonably broad and the court will not singlehandedly deprive Plaintiffs of their ability to put forth evidence in this case. *Hawthorne Partners v. AT&T Techs.*, Inc., 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) ("[E]videntiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context."). Accordingly, the court denies Defendants' request and it limits its analysis of this Motion to Mr. Gilbert's testimony.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Evidence ("Fed. R. Evid.") 104(a), the court must determine "[p]reliminary questions concerning the qualification of a person to be a witness . . . or the admissibility of evidence," including the admissibility of expert testimony under Fed. R. Evid. 702. *Daubert*, 509 U.S. at 587–88. A party offering an expert's opinion "bears the burden of establishing that the 'pertinent admissibility requirements are met by a preponderance of the evidence.'" *Cantrell v. Wirtgen Am., Inc.*, No.: CCB–07–2778, 2011 WL 915324, at *2 (D. Md. Mar. 15, 2011) (quoting Fed. R. Evid. 702 advisory committee notes (citing *Bourjaily v. United States*, 483 U.S. 171, 107 (1987))). In determining the admissibility of an expert's opinion, the court must reconcile the intent for Rule 702 "to liberalize the introduction of relevant expert testimony" with "the high potential for expert opinions to mislead, rather than enlighten, a jury." *Id*.

The admissibility of expert witness testimony is specifically governed by Fed. R. Evid. 702, which provides that an expert may offer an opinion if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In determining whether expert witness testimony is admissible, the court evaluates whether it is relevant and reliable. *Daubert,* 509 U.S. at 589. Under Fed. R. Evid. 401, evidence is relevant if (1) "it has a tendency to make a fact more or less probable than it would be without the evidence" and (2) "the fact is of consequence in determining the action."

In making an assessment of relevance and reliability, courts acting as a "gatekeeper" in determining the admissibility of expert testimony, may consider a number of factors, including:

(1) "whether the theory or technique in question can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate; (4) the existence and maintenance of standards controlling its operation; and (5) whether it has attracted widespread acceptance within a relevant scientific community." *Daubert*, 509 U.S. at 589, 592–595. *Daubert*'s list of factors is "meant to be helpful, not definitive" and "do not all necessarily apply even in every instance in which the reliability of scientific testimony is challenged." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151 (1999). The United States Court of Appeals for the Fourth Circuit adopted this standard for the admissibility of expert witness testimony. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). The Fourth Circuit stated that "the touchstone of admissibility is whether the testimony will assist the trier of fact." *Wehling v. Sandoz Pharm. Corp.*, No. 97-2212, 1998 WL 546097, at *3 (4th Cir. 1998).

### III. ANALYSIS

#### A. Mr. Gilbert's Background

The court must first determine whether Mr. Gilbert is qualified to present expert testimony in this case. Mr. Gilbert is a licensed engineer and received a B.S. degree in Mechanical Engineering from Colorado State University in 1993. (ECF No. 101-3 at 4.) He has been an active member of the Society of Accident Reconstructionists ("SOAR"), Accreditation Commission for Traffic Accident Reconstruction ("ACTAR"), Accident Reconstruction Communications Network ("ARC Network"), National Association of Professional Accident Reconstruction Specialists ("NAPARS"), Canadian Association of Road Safety Professionals ("CARSP"), and the Society of Automotive Engineers ("SAE"). (*Id*.) His company performed the first ever documented un-tripped rollover crash test of a SUV done with an automated system that steered, braked, and accelerated the vehicle by remote. (*Id*.) His company also performed a

similar rollover test of a SUV with a tire tread separation for a police officer organization called MATAI in Iowa. (*Id.*) The test involved a tread separation of the left-rear tire, followed by a rollover to the driver's side. (*Id.*)

Mr. Gilbert was granted a United States Patent for an anti-rollover design, "Method and Apparatus for Reducing Vehicle Rollover." (*Id.*) In addition to investigating and performing a reconstruction of several hundred SUV, automobile, light truck, and heavy truck rollover accidents, he has also performed instrumented handling tests on vehicles with de-treaded and low tread tires mounted on front versus rear axles and published papers on the test results. (*Id*. at 4-5.)

In addition to testing vehicles, Mr. Gilbert has also raced formula cars and won three series championships since 1991. (*Id*. at 5.) In 2006, he obtained his Indy Racing League ("IRL") competition license and drove in his first two Firestone Indy Lights races. (*Id.*) Gilbert drove in the Firestone Indy Lights series during the 2007 and 2008 seasons. (*Id.*) His racing experience included several on-track tire failures. (*Id.*)

From 1999-2000, Mr. Gilbert was the Chief Driving Instructor of Pro-One Motorsports Academy, in addition to being a driving instructor for a BMW car club in Colorado. (*Id.*) He has also participated as an instructor in a driving class for teenagers called Street Survival that launched in 2002. (*Id.*) The course is to teach young drivers about their car's handling limits in the hopes of saving lives. (*Id.*) Through this experience and his racing activities, Mr. Gilbert developed a sense for average driver capabilities and typical untrained driver steering in emergencies. (*Id.*)

In this case, Mr. Gilbert inspected the Subject Vehicle, the accident scene, and the Subject Tire. (ECF No. 101-1 at 12.) He stated that the purpose of his investigation was to reconstruct

the accident sequence, determine the speed and rates of the vehicle, discuss tire failure and its effect on vehicle handling, and determine whether there were any pre-accident vehicle conditions that contributed to the accident. (*Id*. at 4.) Based on the above discussion of Mr. Gilbert's qualifications, the court finds that Mr. Gilbert's knowledge, education, training, and experience qualify him to provide expert testimony in this case and assist the jury to understand the evidence in this case, namely in regard to accident reconstruction.

### B. Crashworthiness or Stability

Defendants move to preclude Mr. Gilbert from offering testimony regarding vehicle crashworthiness or stability at trial, "as it would be unfairly prejudicial since he has not previously disclosed any opinions on these issues and has testified that he does not have any opinions on [such issues]." (ECF No. 101 at 5.) Plaintiffs have stated that they do not anticipate Mr. Gilbert will offer opinions regarding vehicle crashworthiness or stability. (ECF No. 120 at 5.) Therefore, the court denies as moot Defendants' Motion on this issue.

### C. Tire Design and Manufacture/Cause of the Alleged Failure of the Subject Tire

Defendants move to preclude Mr. Gilbert from offering testimony regarding the design and manufacture of the Subject Tire because he "testified that he is not a tire manufacturing expert and does not have a defect opinion in this case." (ECF No. 101 at 5.) Plaintiffs generally agree with Defendants on their position, but assert that Defendants' Motion does not give Plaintiffs sufficient indication of the evidence Defendants seek to exclude, and thus requests that the court allow the testimony to proceed to trial before granting "such blanket exclusions." (ECF No. 120 at 5.)

In their reply, Defendants elaborate on their original Motion, explaining that they are moving to exclude the opinions of Mr. Gilbert as related to design and manufacture of the Subject

6

Tire, as well as the mechanism and cause of the alleged failure of the Subject Tire. (ECF No. 130 at 2-4.) The court finds that Mr. Gilbert is not qualified to offer any opinions on the Subject Tire's design and manufacture or the cause of the alleged failure of the Subject Tire given that he is a not an expert on tire design and manufacture, and Mr. Gilbert admitted that he does not consider himself an expert in tire manufacturing. (ECF No. 101-1 at 19.) Further, an opinion by Mr. Gilbert regarding such issues would be cumulative of the testimony of Plaintiff's tire expert, Dennis Carlson, who the court has already qualified to testify on this subject. (*See* ECF No. 144.) Relevant evidence is inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, *or needless presentation of cumulative evidence*." Fed. R. Evid. 403 (emphasis added).

To the extent Defendants' Motion intends to exclude testimony on the impact the tread-belt separation would have on vehicle handling, Mr. Gilbert is qualified to offer opinions in this area. In his deposition, Mr. Gilbert knowledgably testified about vehicle handling after a tread-belt separation and this testimony falls under his expertise in accident reconstruction as it relates to driver reaction. (ECF No. 101-1 at 4-5.) *See Westberry*, 178 F.3d at 260 (An expert opinion is reliable when "it is supported by adequate validation to render it trustworthy."). For these reasons, the court denies Defendants' Motion on this issue, taking into account the court's aforementioned limitation on Mr. Gilbert's testimony regarding this subject.[2]

---

[2] As a somewhat quid pro quo, Plaintiffs argue multiple times that if Defendants' Motions are granted then Defendants' expert, Mr. Tandy, should be excluded from offering similar testimony in that regard. (ECF No. 120 at 5.) If Plaintiff wanted to seek the exclusion of Mr. Tandy's opinions, then Plaintiffs should have filed a motion to that effect. Because Plaintiffs have not filed

**D. Tire Aging**

Defendants move to preclude Mr. Gilbert from offering testimony regarding "tire aging" as "Mr. Gilbert testified that he does not have any opinions specific to the service life of the Subject Tire other than some manufacturing and industry standards." (ECF No. 101 at 6-7.) Plaintiffs generally agree that Mr. Gilbert will not offer opinions on "tire aging" in the sense of the degradation of the rubber over time. (ECF No. 120 at 6.) However, Plaintiffs contend that Mr. Gilbert is "extremely qualified to offer opinions regarding how tires impact vehicle handling as the tread wears down." (*Id.*) As discussed above, Mr. Gilbert is qualified to testify about subjects that encompass accident reconstruction, vehicle handling being one of them. Therefore, Defendants' Motion on this issue is denied, taking into consideration the court's aforementioned limitation on Mr. Gilbert's testimony regarding this subject.

**E. Origins of Objects in the Subject Vehicle**

Defendants move to exclude Mr. Gilbert from offering testimony regarding the origin of any objects inside the Subject Vehicle, labeling it as "speculative." (ECF No. 101 at 7.) Plaintiffs maintain (as they do consistently throughout their Response) that Defendants' Motion is too vague to be granted outright because its lack of specificity could instead prejudice Plaintiffs by excluding relevant and admissible evidence. (ECF No. 120 at 6.) The court agrees.

Given the brevity of Defendants' argument on this issue, the court is unsure how the origin of objects in the Subject Vehicle are relevant to the issues in this matter. *See Kumho Tire Co.*, 526 U.S. at 152 ("Under Fed. R. Evid. 702, the court's role in considering the admissibility of expert testimony is to assess whether the evidence is sufficiently reliable and *relevant*.") (emphasis

---

a motion, the court will not address Plaintiffs' contentions as to the admissibility of Defendants' expert on the issues mentioned in this Order.

added). Therefore, if presented at trial, the court at that time will make a decision as to the admissibility of this evidence. Defendants' Motion on this issue is denied.

F. Seatbelt

Defendants move to preclude Mr. Gilbert from offering testimony regarding the Subject Vehicle's seatbelts and whether Plaintiffs were using their seatbelts at the time of the accident. (ECF No. 101 at 7.) Defendants assert that Mr. Gilbert did not examine the restraint system in the Subject Vehicle and did not offer any opinions regarding the same in either his deposition or report. (*Id.*) Plaintiffs generally agree that Mr. Gilbert will not offer opinions on seat belt or restraining system usage by the vehicle occupants. (ECF No. 120 at 7.) However, Plaintiffs contend that Mr. Gilbert can testify about his inspection of the Davenport vehicle. (*Id.*)

Because Mr. Gilbert did not examine the restraint system in the Subject Vehicle, any testimony as to whether Plaintiffs were using their seatbelts at the time of the accident would amount to pure speculation. *See In re Bausch & Lomb Contact Lens Sol. Prods. Liab. Litig.*, No. 1785, 2009 WL 2750462, at *9 (D.S.C. Aug. 26, 2009) ("An expert's subjective, personal beliefs or speculation fail to satisfy the requirement of reliability.").[3] Accordingly, Defendants' Motion is granted.

G. Illustrations in Expert Report

Defendants move to exclude the illustration in Mr. Gilbert's expert report that allegedly represents the approximate point of the Subject Vehicle's rollover because it is "highly prejudicial

---

[3] The court will allow Mr. Gilbert to generally testify about his inspection of the Davenport vehicle insomuch as it relates to his opinion on accident reconstruction or vehicle dynamics. *See, e.g.*, Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.").

and likely to mislead the jury." (ECF No. 101 at 7.) Plaintiffs submit that the illustrations will not mislead the jury or be prejudicial "as they depict Mr. Gilbert's opinion regarding the rollover sequence of the Davenport vehicle." (ECF No. 120 at 7.) At a minimum, Plaintiffs contend that illustrations should be permitted for demonstrative purposes. (*Id*.)

The court determines that the picture depicting the rollover is not helpful to the jury as to either issue of liability or damages and does not present any additional information that cannot be brought out simply through Mr. Gilbert's testimony regarding accident reconstruction. Moreover, the prejudicial aspect of this illustration renders it inadmissible. *See* Fed. R. Evid. 403 (Relevant evidence is inadmissible "if its probative value is substantially outweighed by *the danger of unfair prejudice*, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.") (emphasis added); *see also Westberry*, 178 F.3d at 261 ("A trial court must mind the high potential for expert opinions to mislead, rather than enlighten, a jury."). Defendants' Motion on this issue is granted.

### H. Pre-Accident Condition of the Subject Tire

Defendants move to exclude any testimony or opinions from Mr. Gilbert regarding the pre-accident condition of the Subject Tire. (ECF No. 101 at 8.) As previously discussed, Mr. Gilbert is not an expert in tire manufacturing or design and Plaintiffs intend to have an expert testifying on this subject. Any testimony on the pre-accident condition of the Subject Tire by Mr. Gilbert would be unreliable and cumulative of Plaintiff's tire expert, Dennis Carlson. *See* Fed. R. Evid. 702 (Expert testimony must be "based on sufficient facts or data," "the product of reliable principles and methods," and that the expert "reliably appl[y] the principles and methods to the facts of the case."). Accordingly, the court grants Defendants' Motion on this issue.

## I. Effect of the Size of the Subject Tire

Defendants move to exclude any testimony or opinions from Mr. Gilbert that the differences in the sizes of the tires on the Subject Vehicle would not have made a difference on the handling of the vehicle. (ECF No. 101 at 9.) Plaintiffs posit that if Defendants argue that Plaintiffs bear some fault with regard to having a size 245 tire instead of 235, Plaintiffs are allowed to rebut this evidence that the small difference in tire size did not make any difference in the handling of the vehicle or contribute to the tread separation. (ECF No. 120 at 9.)

The United States Supreme Court held that the trial court's gatekeeping function applies to all kinds of specialized knowledge, not only scientific knowledge. *See Daubert*, 509 U.S. 579. The trial court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152. Mr. Gilbert does not provide sufficient support for his conclusion, instead merely offering that in his opinion it would make no difference "because [the size of the tires] is so close." (ECF No. 101-1 at 11.) Mr. Gilbert is not an expert in tire manufacturing and has not performed any on-vehicle testing. (*Id*. at 12.) As such, the court cannot allow testimony that amounts to personal speculation. The court grants Defendant's Motion as to this issue.[4]

## J. National Advanced Driving Simulator

Defendants move to exclude any testimony or opinions from Mr. Gilbert regarding the National Advanced Driving simulator ("NADS") tire tread separation study at the University of

---

[4] The court previously denied admittance of almost identical testimony by Plaintiff's tire expert, Mr. Carlson. (*See* ECF No. 144 at 21.)

11

Iowa in 2002. (ECF No. 101 at 10.) Mr. Gilbert attempts to use the NADS study for three purposes in this case: (1) to support his minimum steer opinions; (2) to support that tread separations are dangerous as a "generic opinion;" and (3) to serve as a warning about trained driver studies. (*Id*.) The purpose of the NADS was to "investigate drivers' reactions to tread separation scenarios. (ECF No. 120 at 10.) Plaintiffs respond that the NADS study is reliable given that it is the comprehensive work of the U.S. Department of Transportation's National Highway Traffic Safety Administration. (*Id*.)

The court acknowledges Defendants' statement that the study itself cautions that it "may be impossible to replicate drivers' real-world expectation concerning the possible occurrence of an unexpected tire failure in any experimental situation" given the forces and variables that could not be replicated by the simulator. (ECF No. 101-7.) However, "Rule 702 does not require that an expert's opinion testimony be expressed in terms of a reasonable scientific certainty in order to be admissible . . . An expert's lack of absolute certainty goes to the weight of that testimony, not its admissibility" *Samuel v. Ford Motor Co.*, 112 F. Supp. 2d 460, 472 n.16 (D. Md. 2000) (quoting *Stutzman v. CRST, Inc.*, 997 F.2d 291, 296 (7th Cir. 1993)) (internal quotation marks omitted). "[T]he court need not determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or certainly correct." *Id*. at 261. Therefore, Defendants' position is more appropriate for cross-examination. *See Daubert*, 509 U.S. at 596 ("[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Consequently, the court denies Defendants' Motion on this issue.

## IV. CONCLUSION

Based on the foregoing, the court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Exclude Testimony of Mr. Gilbert (ECF No. 101).

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

April 4, 2018

Columbia, South Carolina